FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 27 2008

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

# MANDATE

## CERTIFIED QUESTION ANSWERED

STATE OF ARKANSAS
In the Supreme Court

Proceedings of March 6, 2008

07-803
ESSEX INSURANCE COMPANY                                    APPELLANT
V. An Original Action from the
   United States District Court for
   the Eastern District of Arkansas            4:06cv00 1638JLH
JOHN HOLDER, d/b/a J & H
ENTERPRISES, TOM
BAUMGARTNER, AND KARA
BAUMGARTNER                                                APPELLEES

     This Certified Question was submitted to the Arkansas Supreme Court from the United States District Court for the Eastern District of Arkansas and on briefs of the respective parties. After due consideration, it is the decision of the Court that the Certified Question Answered for the reasons set out in the attached opinion.

                    IN TESTIMONY, that the above is a true copy of
                    the judgment of the Arkansas Supreme Court. I,
                    Leslie W. Steen, Clerk, set my hand and affix the
                    seal this 25th day of March, A.D. 2008.

                    _____
                                Clerk

# SUPREME COURT OF ARKANSAS
No. 07-803

| | |
|---|---|
| ESSEX INSURANCE COMPANY<br><br>PETITIONER,<br><br>VS.<br><br>JOHN HOLDER, d/b/a J & H ENTERPRISES, TOM BAUMGARTNER, and KARA BAUMGARTNER<br><br>RESPONDENTS, | **Opinion Delivered** March 6, 2008<br><br>A CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS, HONORABLE J. LEON HOLMES, DISTRICT JUDGE<br><br><br>CERTIFIED QUESTION ANSWERED |

**TOM GLAZE, Associate Justice**

We accepted certification of a single question of Arkansas law submitted by the United States District Court for the Eastern District of Arkansas under Ark. Sup. Ct. R. 6–8, asking this court whether defective construction or workmanship is an "accident" and, therefore, an "occurrence" within the meaning of commercial general liability insurance policies.

Tom and Kara Baumgartner contracted with John Holder's J&H Enterprises to build their new home; however, before construction of the home was completed, the Baumgartners filed suit against Holder in the Pulaski County Circuit Court seeking damages for breach of contract, breach of an express warranty, breach of implied warranties, and negligence. Specifically, the Baumgartners alleged that they suffered damages resulting from Holder's delays, employment of incompetent subcontractors, and defective or incomplete construction. In turn,

Holder demanded that Essex Insurance Company (Essex) defend him in the Baumgartners' action under his commercial general liability (CGL) policies.

Essex responded by filing an action in federal court, seeking a declaratory judgment that it neither owes Holder a duty to defend him in the Baumgartners' lawsuit, nor a duty to pay any judgment the Pulaski County Circuit Court might enter against Holder. Essex asserted that there is no coverage under any of the three CGL policies for the damages alleged by the Baumgartners in state court, and, therefore, Holder is not entitled to a defense or indemnity under those policies. Although the federal district court determined that Arkansas law applies in the declaratory judgment action filed by Essex, it certified this question to the supreme court because we have not decided this specific issue.

Essex issued three separate policies to Holder. In the first policy, 3CM 7680, "occurrence" is defined simply as an "accident." However, the second and third policies, 3CP 6214 and 3CS 3351, added a "Combination Contractor Endorsement" that modified the definition of "occurrence" somewhat and listed several exclusions, stating:

> "Occurrence" means an accident, including the continuous or repeated exposure to substantially the same general harmful conditions; however, the following is not an "occurrence" under this policy:
> a.   Actual and/or alleged defective work; and/or
> b.   Actual and/or alleged defective workmanship; and/or
> c.   Actual and/or alleged defective construction; and/or
> d.   Actual and/or negligent construction

Although the Baumgartners deny that the Combination Contractor Endorsement operates to exclude coverage of their claims against Holder, and state that this is an issue "not presently

before this court," they contend that the endorsement and exclusions "indicate[ ] that Essex at one point considered "occurrence" and "accident" to include 'defective work,' 'defective workmanship,' 'defective construction,' or 'negligent construction.'" The Baumgartners' principal argument on this certified question though, is that the policy term "accident" is undefined within the CGL policy and is therefore ambiguous and should be interpreted liberally in favor of the insured — Holder.

Arkansas case law is well-developed on the construction of insurance policies. When reviewing insurance policies, this court adheres to the long-standing rule that, where terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997). It is unnecessary to resort to rules of construction in order to ascertain the meaning of an insurance policy when no ambiguity exists. *Id.* In other words, the terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid. *Id.*

The fact that a term is not defined in a policy does not necessarily render it ambiguous. *Smith v. Southern Farm Bureau Cas. Ins. Co*, 353 Ark 188, 192, 114 S.W.3d 205, 207 (2003). In *Continental Insurance Company v. Hodges*, 259 Ark. 541, 534 S.W.2d 764 (1976), the court addressed an insurance policy where the term "accident" was not defined in a liability insurance policy, but found that "accident" is usually defined as "an event that takes place without one's foresight or expectation — and event that proceeds from an unknown cause, and therefore not

expected." *Id.* at 543, 534 S.W.3d at 765 (quoting 44 Am.Jur. 2d *Insurance* § 1219 (1969)). In *United States Fidelity & Guaranty Company v. Continental Casualty Company*, 353 Ark. 834, 120 S.W.3d 556 (2003), we addressed a question of whether a portion of a judgment against an insured party was covered under a CGL policy, based on language which provided coverage for "an occurrence" leading to "property damage." Although the policy defined "occurrence" as an "accident," the term "accident" was undefined. *Id.* at 844-45, 120 S.W.3d at 562-63. We remanded the issue to the trial court, explaining the following:

> The policy defines an "occurrence" as "an accident." We have defined an "accident" as an event that takes place without one's foresight or expectation — an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected . . . Because the policy has defined "occurrence" and we have defined "accident," we conclude that the remaining fact question must be resolved in this case before coverage can be determined is whether [ ] workmanship . . . constituted an "accident."

*Id.* at 845, 120 S.W.3d at 563. Without addressing or deciding the question, the opinion noted that there was a "split in jurisdictions over whether defective workmanship is an accident and therefore an occurrence which is covered under the terms of an insurance policy." *Id.* at n.4.

Two years after *Continental Casualty Company*, the federal judge in *Nabholz Construction Corporation v. St. Paul Fire and Marine Insurance Company*, 354 F. Supp. 2d 917 (E.D. Ark. 2005) was presented the question of whether a CGL policy provided liability coverage for deficiencies in construction work. The federal court pointed out that while our court in *Continental Casualty Company*, *supra*, left this specific question unresolved, the federal judge offered his opinion that he believed the Arkansas Supreme Court would likely adopt the majority rule found in other jurisdictions that hold that faulty or defective workmanship is not an accident.

*See id.* at 922 (citing *Heile v. Herrmann*, Ohio App. 3d 351, 353-54, 736 N.E.2d 566, 567 (1999). Also, the federal court found our opinion in *Unigard Security Insurance Company v. Murphy Oil*, 331 Ark. 211, 962 S.W.2d 735 (1998), instructive. There, an Alabama court entered a judgment against Murphy Oil for breach of a lease contract and trespass, and Murphy Oil subsequently sought coverage for the judgment under its general liability policy issued by Unigard. The key question was whether the damage award against Murphy Oil could be considered "sums" that Murphy Oil became legally obligated to pay due to property damage resulting from an "occurrence." *Id.* at 222, 962 S.W.2d at 740. The term "occurrence" in the policies at issue in *Unigard* was defined "as an accidental event." This court denied Murphy Oil's coverage claim, because the basis of the damage award against it resulted not from property damage, but rather from Murphy Oil's failure to perform contractual obligations. *Id.*

Based on the holding in *Unigard*, the federal district court in *Nabholz* stated:

> Similarly, here, the fact that "property damage" occurred does not alone resolve the issue of whether it was caused by an "event" for which the Policy provides coverage. "Event" is defined in this Policy to mean "an accident" to be "an event that takes place without one's foresight or expectation — an event that proceeds from an unknown cause, and therefore not expected."

*Nabholz, supra,* 354 F.Supp. 2d at 921 (quoting *Continental Cas. Co., supra,* 353 Ark. at 845, 120 S.W.3d at 563). Applying this court's definition of an "accident" from *Continental Casualty Company*, the federal district court concluded that the contractor's obligation to repair or replace its subcontractor's defective workmanship could not be deemed unexpected on the part of the contractor, and therefore, failed to constitute an "event" for which coverage existed under the policy. *Id.* at 921-22. The federal court in *Nabholz* was "further persuaded" by the difference

between CGL policies and performance bonds. It offered the following explanation:

> The purposes of a CGL policy is to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property. It is not intended to substitute for a contractor's performance bond, the purpose of which is to insure the contractor against claims for the cost of repair or replacement of faulty work. [Contractor] might have elected to purchase a performance bond to protect it from a known business risk that its subcontractor would not perform its contractual duties. That [the contractor] has no remedy for its subcontractor's default under its CGL policy is neither troublesome nor unexpected given the nature of the risk involved.

*Id.* at 923.

It appears that the majority of states that have considered this issue have held that defective workmanship, standing alone, which results in damages only to the work product itself, is not an accidental occurrence under a CGL policy.[1] While several jurisdictions have

---

[1] *See, e.g., Pursell Constr., Inc. v. Hawkeye-Security Ins. Co.,* 596 N.W.2d 67, 71 (Iowa 1999) ("We agree with the majority rule and now join those jurisdictions that hold that defective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence under a CGL policy"); *Amerisure, Inc. v. Wurster Constr. Co., Inc.,* 818 N.E.2d 998, 1004 (Ind. Ct. App. 2004) (holding that faulty workmanship is not an accident and therefore not an occurrence); *Heile v. Herrmann,* 136 Ohio App. 3d 351, 736 N.E.2d 566, 568 (1999) (holding that faulty workmanship does not constitute an occurrence when the damage is to the work product only); *Monticello Ins. Co. v. Wilfred's Constr.,* 277 Ill. App. 3d 697, 214 Ill. Dec. 597, 661 N.E.2d 451, 456 (1996) (finding that improper construction by a contractor and its subcontractors does not constitute an occurrence when the improper construction leads to defects); *ACUITY v. Burd & Smith Const., Inc.* 721 N.W.2d 33, 39 (N.D. 2006) ("We conclude property damage caused by faulty workmanship is a covered occurrence to the extent the faulty workmanship causes bodily injury or property damage to property other than the insured's work product."); *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.,* 350 S.C. 549, 567 S.E.2d 489, 493 (Ct. App. 2002); *Corder v. William W. Smith Excavating Co.* 210 W. Va. 110, 116, 556 S.E.2d 77, 83 (W. Va., 2001) ("Poor workmanship, standing alone, cannot constitute an 'occurrence' under the standard policy definition of this term as an 'accident including continuous or repeated exposure to substantially the same general harmful conditions.'"); *Auto-Owners Ins. Co. v. Home Pride Cos., Inc.,* 268 Neb. 528, 684 N.W.2d 571, 576-79 (2004) ( CGL policy does not provide coverage for faulty workmanship that damages only the insured's work product); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.* 589 Pa.

found CGL policies to be ambiguous and construed the ambiguity against the drafter, we find these cases unpersuasive.[2] Under Arkansas law, the fact that a term is not defined in a policy does not necessarily render it ambiguous, *Smith v. Southern Farm Bureau Cas. Ins. Co.*, *supra*, and here, our case law has consistently defined an "accident" as an event that takes place without one's foresight or expectation — an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected. *See, e.g., Continental Cas. Co., supra*, 353 Ark. at 845, 120 S.W.3d at 563. Faulty workmanship is not an accident; instead, it is a foreseeable occurrence, and performance bonds exist in the marketplace to insure the contractor against claims for the cost of repair or replacement of faulty work.

Accordingly, we hold that defective workmanship standing alone — resulting in damages only to the work product itself — is not an occurrence under a CGL policy such as the one at issue here.

Certified question answered.

---

317, 335-36, 908 A.2d 888, 899 (Pa. 2006) ("We hold that the definition of 'accident' required to establish an 'occurrence' under the policies cannot be satisfied by claims based upon faulty workmanship."); *Commerce Ins. Co. v. Betty Caplette Builders, Inc.* 420 Mass. 87, 92-93, 647 N.E.2d 1211, 1213-14 (Mass. 1995) (no coverage is provided under a CGL for damages suffered by the homeowners in the underlying actions due to faulty construction or workmanship); *McAllister v. Peerless Ins. Co.*, 124 N.H. 676, 474 A.2d 1033, 1036-37 (1984) (claimed damages were for cost of correcting defective landscaping work with no claim that defects had caused damage to property other than the work product).

[2]*See, e.g., Lamar Homes, Inc., v. Mid-Continent Cas. Co.*, ___ Tex. ___, ___ S.W.3d. ___ (August 31, 2007).

IN TESTIMONY, That the above is a true copy of the opinion of said Supreme Court rendered in the case therein stated, I, Leslie W. Steen, Clerk of said Supreme Court, hereunto set my hand and affix the Seal of said Supreme Court, at my office in the City of Little Rock this __25th__ day of _____March_____, A.D., 2008.

_____
Clerk

By _____
D.C.